UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEKEISHA LINDSEY,<br><br>        Plaintiff,<br><br>    v.<br><br>WC LOGISTICS, INC., et al.,<br><br>        Defendants. | Case No. 21-cv-08400-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS TO REMAND**<br><br>Docket No. 16 |
| DEKEISHA LINDSEY,<br><br>        Plaintiff,<br><br>    v.<br><br>WC LOGISTICS, INC., et al.,<br><br>       Defendants. | **RELATED CASE**<br><br>Case No. 21-cv-08466-EMC<br><br>Docket No. 16 |

    Plaintiff Dekeisha Lindsey filed two lawsuits in California state court against an identical set of Defendants, her former employers, WC Logistics, Inc. and AIT Worldwide Inc. Each suit alleges Defendants violated various California labor laws, including failing to pay overtime and compensate her and other workers for meal and rest breaks. One case was filed as a class action (Case No. 21-8400 or the "Class Action") while the other was filed as a representative action under the California Private Attorney General Act (Case No. 21-8466 or the "PAGA Action"). Defendants removed the cases to federal court, contending that the Court has federal question and diversity jurisdiction over each matter. PAGA Action, Docket No. 1; Class Action, Docket No. 1.

    Now pending are Plaintiff's motions to remand each case to state court, Class Action, Docket No. 16 ("Class MTR"); PAGA Action, Docket No. 16 ("PAGA MTR"), and Defendants'

motions to consolidate the cases, Class Action, Docket No. 19 ("MTC"), and to dismiss the Class Action, *id.*, Docket No. 22 ("MTD"). For the following reasons, the Court **GRANTS** Plaintiff's motions to remand and **DENIES for lack of jurisdiction** Defendants' motions to consolidate the cases and to dismiss the Class Action.

## I. BACKGROUND

A. Relevant Factual Allegations

1. Class Action

Plaintiff filed this action on August 16, 2021, in the Superior Court for the County of Alameda. Class Action, Docket No. 1-2, Exh. 1 ("Class Compl."). The Class Action complaint contains a nineteen causes of action for two separate classes, alleging the following violations: violation of California Labor Code §§ 510 and 1198 (unpaid overtime); violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); violation of California Labor Code § 226.7 (unpaid rest period premiums); violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages) ; violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (violation of California Labor Code § 204 (wages not timely paid during employment); violation of California Labor Code § 226(a) (non-compliant wage statements); violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and violation of California Business & Professions Code §§ 17200 *et seq*.

Plaintiff seeks to certify the following classes and subclasses:

> Class One: All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of the Complaint to final judgment.
>
> > Subclass A: All class one members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all non-discretionary bonuses or other incentive-based compensation in the calculation of the regular rate of pay for overtime pay purposes.
>
> Class Two: All current and former salaried customer account managers, or persons who held similar job titles and/or performed similar job duties, misclassified as "exempt" who worked for Defendants within the State of California during the period from

four years preceding the filing of this Complaint to final judgment.

Class Compl. ¶¶ 14, 120.

### 2. PAGA Action

Plaintiff filed a representative action on August 16, 2021, in the Superior Court for the County of Alameda, asserting a single cause of action for violation of California Labor Code § 2698 *et seq.* for enforcement under the Private Attorneys General Act of 2004 ("PAGA"). PAGA Action, Docket No. 1-2, Exh. 1 ("PAGA Compl."). Plaintiff's PAGA action is predicated on her allegations that Defendants violated California Labor Code §§ 510 and 1198 (unpaid overtime), 226.7 and 512(a) (unpaid meal period premiums), 226.7 (unpaid rest period premiums), 1194, 1197, and 1197.1 (unpaid minimum wages), 201 and 202 (final wages not timely paid), 204 (wages not timely paid during employment), 226(a) (non-compliant wage statements), 1174(d) (failure to keep requisite payroll records), and 2800 and 2802 (unreimbursed business expenses).

### 3. Procedural Background

On October 30, 2021, Defendants timely filed notices removing each action to federal court. Plaintiff filed amended complaints in each action. Class Action, Docket No. 18 ("Class FAC"); PAGA Action, Docket No. 17 ("PAGA FAC"). Currently pending are Plaintiff's motions to remand each action to state court. Class MTR; PAGA MTR. Additionally, Defendants' motion to consolidate the cases and to dismiss Plaintiff's First Amended Class Complaint are also pending. MTC; Class Action, Docket No. 22 ("MTD").

The Court now addresses the threshold question of its jurisdiction over the Class and PAGA Actions.

## II.   STANDARD OF REVIEW

A.   Motion to Remand

The party seeking removal bears the burden of establishing federal jurisdiction. Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009). A suit may be removed from state court to federal court only if the federal court would have had subject

3

1  matter jurisdiction over the case. See 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S.

2  386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court

3  may be removed to federal court by the defendant.").

### III.     DISCUSSION

Defendants filed a notice of removal in each case asserting two grounds for federal court jurisdiction: (1) federal question jurisdiction because Plaintiff's claims are preempted by the FMCSA; and (2) diversity jurisdiction because the parties are diverse and the amount in controversy in each action exceeds $75,000. Each ground is analyzed in turn.

A.     Federal Question Jurisdiction

Defendants advance the same argument that the Court has federal question jurisdiction over the Class and PAGA Actions because Plaintiff's state law wage and hour claims are preempted by federal law. Therefore, the Court applies the same analysis to this asserted ground for removal jurisdiction in each case.

Defendants assert federal question jurisdiction on the basis that Plaintiff's wage and hour claims are preempted by a regulation promulgated by the Federal Motor Carrier Safety Administration. Class Action, Docket No. 1 ¶ 3; PAGA Action, Docket No. 1 ¶ 3. On December 28, 2018, the FMSCA issued an order concluding that California's meal and rest break laws, as applied to commercial vehicle drivers, are preempted by the FMSCA's regulations. 83 Fed. Reg. 67470; 49 C.F.R. § 395.3. The FMSCA promulgated the regulations at issue pursuant to the Federal Motor Carrier Safety Act, 49 U.S.C. § 31141.

The Ninth Circuit held that the "FMCSA permissibly determined that California's [meal and rest break] rules were State regulations 'on commercial motor vehicle safety, so that they were within the agency's preemption authority.'" Importantly, the court applied conflict preemption analysis to determine that the FMSCA's determination that California rules were preempted "was reasonable and supported." *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 854 (9th Cir. 2021). *Teamsters*, thus, concluded that the FMSCA's regulation permissibly preempted California's meal and rest break rules "as applied to drivers of property-carrying commercial vehicles." *Id.* at 856-57. Defendants contend that the holding in

4

*Teamsters* has the effect of *completely preempting* Plaintiff's wage and hour claims, thus providing a basis for this Court to assert federal question jurisdiction. PAGA Action 8466, Docket No. 22 ("Opp. to Remand") at 7-8. Defendants' argument is incorrect.

It is a bedrock, long-settled principle that "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. v. Constr. Laborer Vacation Trust*, 463 U.S. 1, 14 (1983). Where the defense asserts an affirmative defense of preemption, that does not create federal question jurisdiction. The only exception is in cases of "complete preemption," when "the pre-emptive force of a [federal] statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (internal quotation marks omitted); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042-1045 (9th Cir. 2009) (because plaintiff's State-law claims were subject to ordinary preemption by federal cigarette legislation, but not completely preempted, "defendants' preemption argument should have been brought in the context of attacking the merits of [the plaintiff's] case, rather than as a basis for removing the case"); *Balcorta v. Twentieth Century-Fox Film Corp.,* 208 F.3d 1102, 1107 n. 7 (9th Cir. 2000) ("[T]he 'complete preemption' doctrine is a doctrine of jurisdiction and is not to be confused with ordinary preemption doctrine … Thus, the 'complete preemption' doctrine does not abrogate the standard rule that a defense of preemption does not create federal question jurisdiction."). A state law cause of action is completely preempted only when "the federal statute[ ] at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Congress must intend the statute to provide the exclusive cause of action. *Id.* at 9; *see also City of Oakland v. BP PLC*, 969 F.3d 895, 905-06 (9th Cir. 2020) (complete preemption "exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action."). Complete preemption is a rarity, having only been found by the Supreme Court in ERISA, the LMRA, and the National Bank Act. *See Retail Prop. Tr. v. United Bhd. of Carpenters*

5

1  & *Joiners of Am.*, 768 F.3d 938, 948 n.5 (9th Cir. 2014) (citing *Avco Corp. v. Aero Lodge No. 735,*

2  *Int'l Ass'n of Machinists*, 390 U.S. 557, 558–62 (1968); *Metro. Life Ins v. Taylor.*, 481 U.S. 58,

3  65–67 (1987); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7–11 (2003)).

4  "It does not provide *any* private right of action, much less the *exclusive* cause of action."

5  *Hardwick v. Hoovestol, Inc.*, No. CV209707DMGMAAX, 2021 WL 200518, at *1–2 (C.D. Cal.

6  Jan. 19, 2021) (emphasis in the original). "It merely allows the agency to pronounce that state

7  laws that are additional to or more stringent than the federal regulations are not enforceable if the

8  state laws have no safety benefit, are incompatible with the federal regulations, or would

9  unreasonably burden interstate commerce." *Id.* (citing 49 U.S.C. § 31141(c)(4)). Indeed, the

10 statute expressly allows state laws with "the same effect as" the federal regulations to be enforced.

11 49 U.S.C. § 31141(c)(2). This belies the claim of complete preemption.

12 Nothing in the Ninth Circuit's analysis in *Teamsters* suggests, let alone holds, that the

13 FMSCA *completely preempts* state law with regards to wage and hour rules. *Teamsters* applied an

14 ordinary *conflict preemption* analysis to reach its conclusion that California's meal and rest break

15 rules were preempted; such an analysis would have been wholly unnecessary if the FMSCA

16 *completely preempted* state law.[1] That § 31141(c)(2) expressly allowing state laws with "the same

17 effect as" the federal regulations to be enforced demonstrates Congress did not intend to entirely

18 displace state law causes of action. And as noted, the FMSCA does not provide for a federal cause

19 of action that regulations purport to find complete preemption. It is the statute is not persuasive

20 that matters. *Hardwick,* 2021 WL 200518 at *2.

21 Nonetheless, Defendants cite a Central District decision denying a motion to remand by

22 relying on *Teamsters* to hold that Plaintiff's wage and hour claims were "completely preempted"

---

[1] Moreover, is it not clear from the face of the complaints that the FMSCA's regulation apply to here. The Ninth Circuit's decision in *Teamsters* held the FMSCA's regulation was permissible "as applied to drivers of property-carrying commercial vehicles." 986 F.3d 841 at 854. Plaintiff's allegations suggest that Plaintiff was employed by Defendants in the role of "customer account manager," PAGA Compl. ¶ 21, not as a property-carrying driver of a commercial vehicle. While Plaintiff purports to represent non-salaried, non-exempt, hourly-paid workers through these actions, Class Compl. ¶¶ 18-19, 124-25; PAGA Compl. ¶¶ 21-22, it is not clear that the scope of these definitions encompasses the property-carrying drivers properly subject to the FMSCA's regulation.

by the FMSCA's regulation, thus establishing the court's federal question jurisdiction. *Razo v. CEMEX Constr. Materials Pacific, LLC*¸ No. 20-11175-MWF (KSx), 2021 WL 325638, at *5 (C.D. Cal. Feb. 1, 2021). The court in *Razo* appears to have erred in concluding that the regulation evinced *complete preemption* of state law. *Id.* at *4. Complete preemption cannot be achieved by regulation, as *Razo* suggests. *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013) ("Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action."). Additionally, *Razo*'s application of *Teamsters* fails to distinguish between ordinary conflict preemption and complete preemption. Nor did *Razo* did not cite or apply the Supreme Court's test for complete preemption under *Beneficial Nat. Bank*, 539 U.S. at 8. *Razo*.

The FMCSA does not *completely preempt* Plaintiff's state law claims. Thus, Defendants have not established federal question jurisdiction.

B. <u>Diversity Jurisdiction: Amount in Controversy</u>

Defendants assert the Court has diversity jurisdiction over each action under 28 U.S.C. § 1332. Plaintiff does not dispute that the parties are diverse, but argues that Defendants have failed to satisfy their burden to demonstrate in each case that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1).

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (citations omitted). But, "[i]f the plaintiff contests the defendant's allegation," as here, the "[Section] 1446(c)(2)(B) instructs [that] [r]emoval ... is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 88 (internal quotation marks omitted).

"In such a case, both sides submit proof and the court decides, by a preponderance of the

7

evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. [2]  Here, Plaintiff has not alleged an amount in controversy in either action.[3]

"[B]oth parties may submit proof of the amount in controversy through summary-judgment-type evidence including affidavits and declarations, and the defendant seeking removal bears the burden of showing by a preponderance of the evidence that the amount-in-controversy requirement has been satisfied." *Arakji v. Microchip Tech., Inc.*, 2019 WL 5386239, at *3 (N.D. Cal. Oct. 22, 2019) (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015)) (internal quotation marks omitted); *Ibarra*, 775 F.3d at 1198 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."). "When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden

---

[2] In *Dart Cherokee*, "[t]he Supreme Court did not decide the procedure for each side to submit proof on remand" and the Ninth Circuit declined to "decide the procedural issue, either." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199–200 (9th Cir. 2015). District courts in the Ninth Circuit have held that a plaintiff is required "to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meet its initial burden." *See Townsend v. Brinderson Corp.*, 2015 WL 3970172, *3 (C.D.Cal.2015); *Ruano v. Sears Roebuck & Co.*, 2015 WL 6758130, *2 (C.D.Cal.2015) ("Plaintiffs can also submit evidence in opposition, but there is no requirement that they do so[.]") (citation omitted); *Vitale v. Celadon Trucking Servs.*, 2015 WL 5824721, *2 (C.D.Cal.2015) (same). A Central District court previously noted, "[n]umerous cases after *Dart Cherokee* have concluded, either explicitly or implicitly, that while a plaintiff may rebut defendant's evidence with his or her own evidence, he or she need not do so in order to prevail on a motion to remand." *Townsend*, 2015 WL 3970172, at *3 (collecting cases); *see also Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1120 (C.D. Cal. 2016). Here, as explained below, Defendants have not offered *any* evidence in support of their assertions of the amount in controversy, thus the Court need not resolve this open procedural question.

[3] Contrary to Plaintiff's suggestion during the hearing, there is no Ninth Circuit authority requiring courts to apply a "legal certainty" standard to a removing defendant when a complaint specifically alleges damages less than the jurisdictional amount. *See Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) ("[W]here a party seeks to remove a case from state to federal court under 28 U.S.C. § 1441, the proponent of removal bears the burden of establishing federal jurisdiction by a preponderance of the evidence."). *See also Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) *overruling Lowdermilk v. U.S. Bank National Association,* 479 F.3d 994, 999 (9th Cir. 2007) (in the context of CAFA, "[a] defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum. This standard conforms with a defendant's burden of proof when the plaintiff does not plead a specific amount in controversy). In any event, the distinction is irrelevant here because Plaintiff's original complaint does *not* allege that the amount is controversy is less than $75,000. Plaintiff may not rely on amendments to her complaint filed *after* removal to *destroy* the Court's removal jurisdiction. *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016).

of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted).

The Court thus examines whether Defendants have satisfied their burden in each action.

1. Class Action

In a class action brought outside of CAFA, at least one named plaintiff in the class must satisfy the $75,000 amount in controversy requirement. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010) ("Prior to CAFA, a class action could be heard in federal court under diversity jurisdiction only if there was complete diversity, i.e., all class representatives were diverse from all defendants, and if at least one named plaintiff satisfied the amount in controversy requirement of more than $75,000.").[4]

Defendants do not proffer an estimate of the amount in controversy, but, instead, the notice of removal asserts the amount in controversy "associated with Plaintiff's claims" *exceeds* $75,000 because:

> a. Plaintiff uses California Business & Profession Code sections 17200 *et seq.* to assert that the claims she is asserting are **subject to a four-year statute of limitations**. . .
>
> c. **The employees in the positions described by Class Two are paid an annual salary of approximately $75,000**. (Mancuso Decl. ¶ 11.) Plaintiff seems to assert that this pay was only to compensate Plaintiff and the other members of Class Two for their first eight hours per day (for up to six days) and their first 40 hours per week. This **equates to an implied hourly rate of approximately $36 per hour**.
>
> d. Plaintiff alleges that she and the other members of Class Two

---

[4] Defendants' notice of removal asserts removal jurisdiction pursuant to ordinary diversity jurisdiction where the amount in controversy exceeds $75,000. Class Action, Docket No. 1 ¶¶ 10-11. Defendants did not assert that the requirements of the Class Action Fairness Act ("CAFA") were satisfied, nor do they invoke CAFA, 18 U.S.C. § 1332(d) as a ground for removal jurisdiction. Defendant's notice makes a conclusory reference to CAFA in a footnote, asserting that, "Even if the classes do include an Illinois transplant, jurisdiction is still appropriate under the 'minimal diversity' standards of the Class Action Fairness Act." *Id.* fn. 4. Defendants, however, make no attempt to show that CAFA's $5 million amount in controversy requirement is satisfied. Defendants may not present new grounds for removal for the first time in its opposition to remand, thus, Defendant's argument in opposition to Plaintiff's motion to remand asserting jurisdiction under CAFA is improper and is not considered by the Court. *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000).

>were consistently deprived of their meal and rest periods. **Over the four-year limitations period suggested by Plaintiff, this equates to $37,500 in potential liability associated with each employee's meal and rest period claims**—even assuming that employees could not claim both a meal premium and a rest premium for the same day.
>
>e. Plaintiff alleges that she and other members of Class Two were consistently deprived of overtime pay. **Assuming that Plaintiff asserts four hours of overtime pay per week (less than the national average for full-time employees), this equates to over $47,000 in potential liability** associated with each employee's overtime claims over the four-year limitations period.
>
>f. In addition to these amounts, Plaintiff also seeks on behalf of Class Two up to thirty days' additional pay for each employee, statutory penalties plus 25 percent of alleged unlawfully withheld payments, a $4,000 per employee penalty, unreimbursed business expenses, various forms of consequential and incidental damages, attorneys' fees, and interest on behalf of the members of Class Two.

Class Action, Docket No. 1 ¶ 11 (emphases added). The only relevant evidence that Defendants provide with the notice of removal is a declaration in which Defendants' employee states that the majority of employees who fall under Plaintiff's Class Two definition have a salaried rate above $75,000. *Id.*, Docket No. 1-2 ¶ 11.

Plaintiff argues that Defendants' calculations lack factual bases, because they are not based on Plaintiff's annual salary, the calculations do not assess potential liability based on evidence of the frequency of meal break, rest break and overtime claims, and the calculations are disconnected from the number of pay periods Plaintiff worked for Defendants before she was terminated. Class Action, MTR at 15. Moreover, Plaintiff argues that Defendants fail to provide any basis for their chain of assumptions to calculate the amount in controversy, such as assuming a 100% violation rate – that Plaintiff alleges violations of *every* meal and rest break on *every* day that she worked – or assuming that she worked four hours of overtime per week. *Id.* at 18-19.

In opposition, Defendants, first, provide a supplemental declaration and supporting evidence of Plaintiff's offer letter indicating she had an annual starting salary of $66,000 (which is consistent with Plaintiff's allegation of her starting salary in her first amended complaint). Docket No. 21-1 ¶ 13; Docket No. 18 ¶ 128. Second, Defendants argue that their calculations of 100% violation rates of meal and rest period were based on reasonable assumptions because Plaintiff's complaint is vague and alleges consistent illegal practices. Opp. at 11, 14 ("Defendants can only

assume that Plaintiff is alleging that the kinds of facts underlying her claims were occurring on a regular – even daily – basis"). Third, Defendants cite to Plaintiff's first amended complaint, Docket No. 18, where she alleges that was "typically working at the office from 10am to 7pm and would go home then proceed to work from 9pm to 12am" to contend that the notice of removal actually *underestimated* the amount of overtime Plaintiff sought to recover. *Id.* at 13 (citing Docket No. 18 ("FAC") ¶ 136). Based on this allegation in the FAC, Defendants argue that Plaintiff's overtime claims amount to up to 20 hours per week, which, multiplied by an overtime premium applied to an hourly rate of $31.30 extrapolated from Plaintiff's $66k starting salary, would amount to $951 in overtime compensation per week. *Id.* Accordingly, Defendants argue that the $75,000 jurisdictional amount would be exceeded *on the overtime claim alone* if Plaintiff worked the twelve-hour daily schedule she alleges was "typical" for 79 of the 150 weeks in the relevant timeframe (August 16, 2017 to Plaintiff's termination in July 2020), which is a violation rate significantly less than 100%. *Id.*

Defendants' arguments, however, are not persuasive and Defendants have failed to offer evidence to carry their burden to demonstrate the amount in controversy exceeds the jurisdictional amount by a preponderance of the evidence.

First, Defendants' citation to an offer letter showing that Plaintiff's starting salary was $66,000 *undermines* the assumption Defendants put forward in their notice of removal that Plaintiff was compensated at $75,000 annually. Defendants' calculations in in the notice of removal are based on their erroneous assumption that Plaintiff was compensated at $75,000 per year.

Moreover, the Court cannot credit Defendants' assumption of a 100% violation rate. "Where the complaint contains generalized allegations of illegal behavior, a removing defendant must supply 'real evidence' grounding its calculations of the amount in controversy." *Dobbs v. Wood Group PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (*citing Ibarra*, 775 F.3d at 1199). "Generally, the spectrum of similar cases has two end-points: the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Id.* at 1188 (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d

11

1200, 1202 (9th Cir. 2015)). For instance, it is reasonable to assume a 100% violation rate if the "complaint specifically alleges a 'uniform' practice" and the plaintiff offers no competent evidence in rebuttal to a defendant's showing. *Id.* However, it is unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a "pattern and practice" of labor law violations. *Id.* at 1189 (citing *Ibarra*, 775 F.3d at 1198–99 ("a 'pattern and practice' of doing something does not necessarily mean *always* doing something")); *see also, Freeman v. Mercy Servs. Corp*, No. 216CV01151TLNKJN, 2017 WL 2572428, at *3 (E.D. Cal. June 14, 2017) (stating, "just as 'pattern and practice' does not mean always or universally, neither does "at all material times" mean each and every pay period."). In "pattern and practice" cases, the removing party may still establish the requisite amount in controversy if its calculations rely on extrapolations from admissible statistical evidence. *LaCross*, 775 F.3d at 1202–03.

Here, Plaintiff's complaint alleges that Defendants "engaged in a **pattern and practice** of wage abuse against their hourly-paid or non-exempt employees. . . [by] failing to pay them for all regular and/or overtime wages earned and for missed periods and rest breaks in violation of California law." Compl. ¶ 26 (emphasis added). Contrary to Defendants' assertion, the complaint *does not* allege Defendants engaged in a "uniform practice" to violate state labor law. In light of the complaint's use of "pattern and practice" language, Defendants cannot reasonably assume as 100% violation rate without providing evidentiary support for its assumption. *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that a 20% violation rate for meal and rest period was reasonable where the plaintiff alleged a "pattern or practice" of violations); *Mendoza v. Savage Servs. Corp.*, No. 2:19-CV-00122-RGK-MAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (same). Defendants fail to provide *any* evidence to support its 100% violation rate assumption, let alone admissible statistical evidence as contemplated by the Ninth Circuit. *See LaCross*, 775 F.3d at 1202-03.

Thus, Defendants' assertion that $37,500 is in controversy based on Plaintiff's allegations of meal and rest break violations lacks support for two independent reasons: (a) the amount is calculated based on an erroneous assumption that Plaintiff's salary was $75,000 when, in fact, Defendants concede Plaintiff's salary was actually $66,000, and (b) the calculation is based on an

12

unreasonable and unsubstantiated assumption of a 100% violation rate.

Defendants' calculation of overtime damages is also unsupported. It is based on Plaintiff's amended allegations of her "typical" working day. Based on Plaintiff's allegation that she "was typically working at the office from 10:00 a.m. to 7:00 p.m. and would go home and then proceed to work from 9:00 p.m. to 12:00 a.m.," FAC ¶ 136, Defendants argue:

> Assuming Plaintiff will assert an hourly rate of $31.30—which is a conservative estimate based off of Plaintiff's initial $66,000 salary—she would seek $951 in overtime compensation for each of the weeks when she followed this "typical" schedule. If she contends that 79 of her weeks were "typical"—and even if she does not contend that any weeks went beyond the number of hours she describes—then Plaintiff has put more than $75,000 in controversy even before the Court considers any of her other theories, claims for relief, or calculations. Given that Plaintiff was employed for approximately 150 weeks during the relevant timeframe, this calculation would assume a "violation rate" much lower than 100% and still provide a ground for diversity jurisdiction before the Court considered any of her other theories, claims for relief, or potential damages.

Opp. at 13-14. Plaintiff argues that her "allegation that she 'worked from 10 a.m. to 7 p.m. and then went home and worked from 9pm to 12pm' does not provide a basis for assuming that Plaintiff is claiming that she *ever* worked 12-hour days, as such an assumption would also require the assumption that she did not take rest breaks or meal breaks during the day, which is also unreasonable to assume." Docket No. 24 ("MTR Reply") at 17 (emphasis in the original). Plaintiff further argues that her "allegation that she "typically" worked over eight hours is not equivalent to an allegation that she worked over 8 hours *every single weekday over the four-year statutory period*" as this would "require the Court to assume that Plaintiff worked on holidays and never took vacation days or sick days, which is also unrealistic and unreasonable." *Id.* at 17-18.

It bears reiterating that Defendants declined to present *any* evidence in support of its calculations or factual bases for its estimates, and Defendants declined to calculate an estimated amount in controversy based on varying unsupported assumptions. C*ompare LaCross*, 775 F.3d at 1203 (finding defendant's calculations for the amount in controversy reasonable because the defendant extrapolated costs based on, "actual invoiced ... costs" and the number of employees during the putative class period), *with Akana v. Estee Lauder Inc.*, No. LACV 19-00806-JAK

13

(PLAx), 2019 WL 2225231, at *6 (C.D. Cal. May 23, 2019) (rejecting defendant's calculations for the amount in controversy because the defendant failed to provide relevant information necessary to calculate potential liability); *see also Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *4 (C.D. Cal. Sept. 5, 2019) ("[T]he Court will not consider any amount-in-controversy figure for Plaintiff's fourth, fifth and seventh claims here because it is Aerospace's burden to demonstrate that figure and it has not offered *any* figure in connection with those claims in either its Notice of Removal or its Opposition to this motion. The Court cannot simply pull numbers from the ether.") (emphasis in the original).

Defendants concede that they assume that she "typically" worked 4 hours of overtime per day depends on the assumption that Plaintiff was denied meal and rest breaks at a 100% violation rate. Opp. at 14. As explained above, this assumption is not reasonable to draw from the "pattern and practice" language in the complaint, and Defendants *still* offer no evidence supporting its assumption of a 100% violation rate. *Cf. Garibay v. Archstone Cmts. LLC,* 539 F. App'x 763, 764 (9th Cir. 2013) (finding the defendants failed to provide evidence that the assumption of two rest break violations per week was "more appropriate" than one violation per pay period or one violation per month). Accordingly, Defendants' assumption that Plaintiff typically worked 4 hours of overtime per day and, thus, 20 hours of overtime per week is based on an unwarranted assumption. If, for instance, she was not provided with rest and meal breaks only 20% of the time, *See Chavez, supra* at *3, then 80% of the time she would have worked, *e.g.*, only 10-11 hours a day. Furthermore, Defendants' proffered calculation showing overtime exceeds $75,000 also assumes Plaintiff worked 20 hours of overtime for 79 of the 150 weeks of the statutory period. But Plaintiff's use of the term "typical" in describing how often she worked overtime could easily imply it occurred 75 out of 150 weeks. Nor do Defendants account for possible holidays, sick days and vacations.

Defendants do not calculate how many days or weeks Plaintiff would need to work at a lesser number of overtime hours in order to exceed the jurisdictional amount, and, therefore, Defendants do not demonstrate that the assumptions required to reach such a number would be *reasonable* based on the allegations in the FAC. The Court has no obligation to guess what those

14

assumptions could or should be, nor to calculate how those assumptions would play out.

Rather than base their estimates on pure assumptions, Defendants could have produced evidence of actual hours and days worked. They did not. Defendants attempt to sidestep their obligation by shifting the burden to Plaintiff to produce evidence in support of their alternative view that the amount is controversy is not satisfied. But the cases Defendants cite do not stand for these propositions. In *Herrera v. Carmax Auto Superstores California, LLC*, 2014 WL 12586254, at *2 (C.D. Cal. June 12, 2014), the court noted that, "[W]hen a complaint vaguely alleges 'consistent' violations based on the defendant's 'uniform policies,' the removing defendant is often incapable of producing any evidence going directly to the frequency of the violations, especially given that the defendant likely disagrees that any violation occurred at all." But, here, as explained above, Plaintiff does not allege "consistent" violations based on Defendants' "uniform policies." Instead, as noted above, Plaintiff alleges a "pattern and practice," which does not automatically support an assumption of a 100% violation rate. *See Ibarra*, 775 F.3d at 1198–99 ("a 'pattern and practice' of doing something does not necessarily mean *always* doing something"). And Defendants' citation to *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041-1042 (N.D. Cal. 2014) for the proposition that "a defendant's reasonable extrapolations from the plaintiff's allegations suffice to establish the amount in controversy, if unrebutted by the plaintiff," merely begs the question of whether Defendants' assumptions are, in fact, reasonable. Defendants cannot escape their burden to produce evidence in support of its assumptions and calculations of the amount in controversy where the facts are not obvious from the face of the complaint. *See Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1121 (C.D. Cal. 2016) ("In reviewing the 'summary-judgment-type evidence' required for a defendant to meet its burden on removal, *see Ibarra*, 775 F.3d at 1197, the court 'can only consider admissible evidence[.]' *See Ibarra*, 775 F.3d at 1199 (When a defendant relies on assumptions in calculating the amount-in-controversy, "those assumptions cannot be pulled from thin air but need some reasonable ground underlying them.").

The fact that Defendant's failed to carry their proof by a preponderance of the evidence is meaningful here where a slight shift in assumptions can make a material difference. For instance,

15

1    if one were to assume a period of 150 weeks, an hourly rate of $31.30, a 20% meal and rest break

2    violation rate, and a 50% overtime violation rate (75 out of 150 weeks Plaintiff worked), the

3    amount in controversy would be approximately $64,000.  It was incumbent on Defendants to

4    provide evidence and alternative calculations.  They failed to do so.

5          In light of Defendants failure to carry its burden to demonstrate that the amount in

6    controversy in the Class Action exceeds the jurisdictional threshold, and keeping in mind that

7    "[t]he removal statute is strictly construed, and any doubt about the right of removal requires

8    resolution in favor of remand," the Court grants Plaintiff's motion to remand the Class Action.

9    *See Moore-Thomas*, 553 F.3d at 1244.

10       2.     PAGA Action

11         PAGA allows an "aggrieved employee" to bring an action for civil penalties "on behalf of

12   himself or herself and other current or former employees."  Cal. Lab. Code § 2699(a).  The act

13   imposes penalties of $100 for the initial violation as to each aggrieved employee, and $200 for

14   each subsequent violation.  *Id.* at § 2699(f)(2).  Of the total penalties assessed, 75% shall be

15   distributed to the Labor and Workforce Development Agency, and 25% directly to the aggrieved

16   employees.  *Id.* at § 2699(h)(i).

17         The penalties attributed to all aggrieved employees may not be aggregated to satisfy the

18   amount in controversy.  *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118 (9th Cir. 2013).

19   Only those recoverable by the named plaintiff are considered.  *Id.* at 1122-23 ("Each employee

20   suffers a unique injury—an injury that can be redressed without the involvement of other

21   employees.... Thus, diversity jurisdiction does not lie because their claims cannot be aggregated.").

22         Defendants' notice of removal does not specify that amount in controversy, but rather

23   asserts the jurisdictional threshold is exceeded by improperly grouping the claims of *all employees*

24   covered by the PAGA action.  PAGA Action, Docket No. 1 ¶ 11 ("The potential penalties are well

25   in excess of the jurisdictional thresholds.  The employees at issue were all paid every 14 days

26   meaning that they experienced approximately 39 pay periods between April 2020 and the present.

27   Plaintiff alleges that each of the 19 regulatory violations occurred at 'all' relevant times – in other

28   words for each of these 39 pay periods.").  Defendants fail to analyze the amount in controversy

16

attributed to Plaintiff. Defendants also incorrectly assert that Plaintiff alleged 19 regulatory violations when the complaint alleged just 9 underlying labor code violations. PAGA Compl. ¶¶ 56-65. Still, even if Defendants' assertions were credited, they fail to actually calculate the amount that they think is in controversy, instead generally asserting that the jurisdictional amount was exceeded.

Defendants' conclusory assertions that the jurisdictional amount is exceeded without evidence, calculations or explanation of their assumptions is insufficient to satisfy their burden to prove by the preponderance of the evidence that the jurisdictional threshold is exceeded in the PAGA Action. Thus, Defendants have failed to demonstrate that the Court has diversity jurisdiction over the PAGA Action. Accordingly, the Court grants Plaintiff's motion to remand the PAGA Action.

## IV. CONCLUSION

The Court concludes that it does not have federal question jurisdiction over either the Class Action or the PAGA Action. The Court also determines that it lacks diversity jurisdiction over either action.

The Court **GRANTS** Plaintiff's motions to remand the Class Action and PAGA Action to state court because the Court lacks subject matter jurisdiction. Class Action, Docket No. 16; PAGA Action, Docket No. 16. Accordingly, the Court **DENIES** Defendants' motions to consolidate cases and to dismiss the Class Action. Class Action, Docket Nos. 19, 22.

This order disposes of Class Action Docket Nos. 16, 19, 22 and PAGA Action Docket No 16. Case Nos. 21-cv-8400-EMC and 21-cv-8466-EMC are **REMANDED** to the Superior Court of the State of California for the County of Alameda.

**IT IS SO ORDERED**.

Dated: February 16, 2022

_____
EDWARD M. CHEN
United States District Judge

17